UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

T.M., by her next friend MEAKA
MOBLEY,

                Plaintiff,                        Case Number 15-14406

v.                                       Honorable David M. Lawson

DETROIT PUBLIC SCHOOLS,
CHRISTOPHER LOCKHART,
FIRST STUDENT, INC., and
ANDRI MORNING,

                Defendants.
_____/

## OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS ANDRI MORNING AND FIRST STUDENT, INC.

Plaintiff T.M. alleges in a complaint that she was the victim of an assault in January 2013 by her fellow students at the Marquette Academy, which is operated by defendant Detroit Public Schools.  T.M. contends that while she was walking home, the driver of a bus operated by defendant First Student, Inc. made an unscheduled stop and allowed the assailants to debark and attack her. The case is now before the Court on a motion for summary judgment by defendant First Student, Inc. and its employee defendant Andri Morning.  The defendants ask the Court to dismiss with prejudice the sole claim that the plaintiff has pleaded against them, which is count I of the amended complaint, alleging negligence and vicarious liability under state law.  The Court heard oral argument on June 27, 2016.  Because discovery is not complete, fact issues need resolution, and the record developed so far establishes a legal duty on the part of the defendants toward the plaintiff, the Court will deny the motion for summary judgment.

I.

In January 2013, plaintiff T.M. was a student in the sixth grade at the Marquette Academy. Defendant First Student, Inc. operates school buses and transports students under a contract with defendant Detroit Public Schools.  Defendant Andri Morning is a bus driver employed by First Student.

On January 16, 2013, T.M. saw a fight at school involving student R. Later, at lunch, R. asked T.M. who she thought had won the fight, and T.M. replied that she thought R. had lost.  R. and a friend of hers then told T.M. that "[t]hey were going to fight me at the end of the day."  At the end of the school day, R. punched T.M. on the side of her face when T.M. walked out of school. After R. hit her, T.M. fought back, but the school principal, defendant Christopher Lockhart, broke up the fight and took T.M. back into the building.  Later, T.M. saw Lockhart speaking to Morning, who was the driver of the bus that T.M. rode to and from school.  Lockhart escorted T.M. back out of the school building, and T.M. heard Lockhart tell Morning that T.M. would walk home. Lockhart then told T.M. to walk home and not ride the bus.  T.M. complied because she wanted to avoid R., who rode the same bus, and she thought R. would try to start another fight with her.

T.M.'s mother testified that T.M. had called her during the school day about the fight, and she also spoke to Principal Lockhart on the phone about the incident.  Lockhart told T.M.'s mother that he had spoken to defendant Morning and informed him that T.M. and her sister would be walking home, and there should be no contact between T.M. and R.

As T.M. was walking home with her sister, when she was almost at the corner by her house, she saw R. and several of R.'s friends get off the bus.  R. started a fight with T.M.  R. and two of her friends joined in the fight, pinned T.M. on the ground, and hit and kicked her in the head, face, back,

and stomach, also pulling out some of her braids. Approximately fifteen other students also had gotten off the bus to watch the fight. Eventually, a boy in the audience broke up the fight and helped T.M. to get up. The other students who had watched the fight got back on the bus, but the three girls who had attacked T.M. ran away instead of reboarding the bus. T.M. testifed that she knew the normal route that the bus took because she rode it every day, and the corner where R. got off the bus was not a scheduled stop. Students only were allowed to exit at scheduled stops and could not get off the bus wherever they desired.

The plaintiff contends that the record is incomplete at this early stage of the proceedings and insufficient to allow a proper evaluation of the merits of her claims, because, among other things, she has not had a chance to depose defendant Lockhart and other representatives of the school district, or to take testimony from defendant Morning and other employees of defendant First Student, Inc., such as Morning's supervisor. As a result, there is nothing in the record to indicate what, if anything, occurred on the bus before the students disembarked, during the fight, or afterwards when the student onlookers got back on board and the bus left.

The plaintiff filed her amended complaint in the Wayne County, Michigan circuit court on October 14, 2015. The complaint pleads three counts for (1) negligence, against defendants First Student, Inc. and Andri Morning only (count I); (2) violation of the plaintiff's substantive due process rights under the Fourteenth Amendment, via 42 U.S.C. § 1983, against defendant Christopher Lockhart (count II); and (3) a *Monell* claim for deficient supervision and training against defendant Detroit Public Schools (count III). Defendant Detroit Public Schools removed the case to this Court on December 21, 2015. The complaint and other papers were amended to redact the names of the minors. Under the scheduling order entered by the Court, discovery remains open.

Defendants First Student and Morning did not file an answer to the amended complaint, but instead responded by filing their motion for summary judgment.

They argue that (1) as a matter of law they had no duty to the plaintiff beyond their contractual obligation to provide transportation, because there was no "special relationship" between the defendants and the plaintiff, where the plaintiff was an ordinary pedestrian and not on the defendants' bus or in their care when the fight occurred; (2) it is a well-established general rule of law that an ordinary individual defendant has no duty to intervene and protect a plaintiff from an intentional assault by a third-party; (3) the defendants' conduct was not a proximate cause of the plaintiff's injuries, which were not a foreseeable consequence of letting students off at the wrong bus stop; and (4) the intentional criminal assault of the plaintiff by her attackers was an intervening and superseding cause that severed the chain of proximate cause between the defendants' conduct and the plaintiff's injuries.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

"The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the

absence of a genuine dispute over material facts." *Id.* at 558. (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting 477 U.S. at 248).

The plaintiffs brought their claims against defendants First Student and Morning under Michigan negligence law, and the case against those defendants is before the Court under its supplemental jurisdiction. *See* 28 U.S.C. § 1367(a) (stating that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over

-5-

all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution"); *see also Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir. 2004). "A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999). In such cases, the Court must apply the law of the forum state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). If the state's highest court has not decided an issue, then "the federal court must ascertain the state law from 'all relevant data.'" *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir.1995) (quoting *Bailey v. V. & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985)). "Relevant data includes the state's intermediate appellate court decisions, as well as the state supreme court's relevant *dicta*, restatements of the law, law review commentaries, and the majority rule among other states." *Ososki v. St. Paul Surplus Lines*, 156 F. Supp. 2d 669, 674 (E.D. Mich. 2001) (internal quotation marks and citation omitted) (citing *Angelotta v. Am. Broad. Corp.*, 820 F.2d 806, 807 (6th Cir. 1987)).

## A.

Under Michigan law, a plaintiff asserting a negligence claim must establish that (1) the defendants owed her a duty, "(2) the defendant breached that duty, (3) the defendant's breach was a proximate cause of the plaintiffs injuries, and (4) the plaintiff suffered damages.'" *Black v. Shafer*, No. 149516, --- Mich. ---, 879 N.W.2d 642 (Mich.) (mem) (quoting *Perry ex rel. Latham v. Nat'l Car Rental Sys., Inc.*, 239 Mich. App. 330, 340, 608 N.W.2d 66, 71 (2000)). "'A negligence action may only be maintained if a legal duty exists which requires the defendant to conform to a particular

standard of conduct in order to protect others against unreasonable risks of harm.'" *Marcelletti v. Bathani*, 198 Mich. App. 655, 658, 500 N.W.2d 124, 127 (1993) (quoting *Riddle v. McLouth Steel Products Corp.*, 440 Mich. 85, 96, 485 N.W.2d 676, 681 (1992)). Michigan courts have held that "[t]he threshold issue of the duty of care in negligence actions must be decided by the trial court as a matter of law." *Riddle*, 440 Mich. at 95, 485 N.W.2d at 681.

The defendants have identified correctly the general rule in Michigan that "there is no duty to protect against the criminal acts of a third person absent a special relationship between the defendant and the plaintiff or the defendant and the third person." *Babula v. Robertson*, 212 Mich. App. 45, 49, 536 N.W.2d 834, 837 (1995). They argue that there is no special relationship recognized by Michigan law between a school bus driver and a student at the school who does not happen to be on the driver's bus at the time.

"'Special relationships' recognized under Michigan law include landlord-tenant, proprietor-patron, employer-employee, residential invitor-invitee, psychiatrist-patient, and doctor-patient." *Marcelletti*, 198 Mich. App. at 664, 500 N.W.2d at 129 (quoting *Bell & Hudson, P.C. v. Buhl Realty Co.*, 185 Mich. App. 714, 717-18, 462 N.W.2d 851, 853 (1990)). "The court will impose a 'special relationship' duty only where a person's actions directly influence another." *Marcelletti*, 198 Mich. App. at 665, 500 N.W.2d at 130, 1993. "Michigan courts have defined as third parties only 'those persons readily identifiable as foreseeably endangered.'" *Ibid.* "The rationale behind imposing a duty to protect in these special relationships is based on control." *Williams v. Cunningham Drug Stores, Inc.*, 429 Mich. 495, 499, 418 N.W.2d 381, 383 (1988). "The duty to protect is imposed upon the person in control because he is best able to provide a place of safety." *Ibid.*

-7-

The analysis of whether the defendant has a duty to protect an innocent plaintiff from the criminal act of a third party under his purview "depends on the relationship between the parties, the nature and foreseeability of the risk, and any other considerations that may be relevant on the issue," and the "ultimate decision turns on whether a sufficient relationship exists between [the defendant] and a third party to impose a duty under [the] circumstances." *Buczkowski v. McKay*, 441 Mich. 96, 103, 490 N.W.2d 330, 334 (1992). "Ultimately, whether [the court] should impose a duty on the defendant . . . despite the actual lack of foreseeability turns on whether as a matter of policy [the defendant] should bear the burden of plaintiff's loss." *Id.* at 108, 490 N.W.2d at 336.

The plaintiff has advanced ample evidence from which the Court could conclude as a matter of law that defendant Morning expressly was charged with a duty to keep student R. and T.M. separated, and that he knew that a physical altercation likely would result if the students were put together. The plaintiff testified that she heard Principal Lockhart tell Morning that T.M. would not be riding the bus and should have no contact with R. to prevent any further attacks by R. Michigan courts have held that a defendant may be liable for negligence where he knew that an assault was likely to occur or in progress, assumed a duty to prevent it or at least notify authorities of the danger, and yet stood by and did nothing while the attack proceeded. *See, e.g.*, *Tucker v. Sandlin*, 126 Mich. App. 701, 705-06, 337 N.W.2d 637, 640 (1983). In that case the court explained:

> [P]laintiff presented evidence which could support findings that (1) the security guard, Rothgeb, had actual notice of a life-threatening assault on the fifth floor of the student parking ramp, (2) that Rothgeb promised the victim of this first assault that he would "take care" of the task of informing police of the assailant's presence, thereby undertaking a duty to all users of the ramp that he would do so, and (3) that Rothgeb failed to immediately notify police, an omission which certain expert testimony indicated was a breach of the standard of care applicable to a security guard in Rothgeb's position. Plaintiff's proofs not only precluded judgment n.o.v. as to the issues of duty and negligence but also as to the issue of proximate cause. A jury could reasonably find that Rothgeb's omission directly caused plaintiff's

injuries, by enabling the assailant to remain on the premises and carry on his criminal conduct without interruption.

*Ibid.* The parties have cited no case law precisely addressing the extent of a school bus driver's duty to supervise students, and the Court has found no Michigan cases on that point. But it is well established that school personnel generally have a duty to control and oversee the students committed to their care.

For instance, it is well established under Michigan law that "a teacher owes a duty to exercise reasonable care over students in his or her charge." *Cook v. Bennett*, 94 Mich. App. 93, 98, 288 N.W.2d 609, 611 (1979) (citing *Gaincott v. Davis*, 281 Mich. 515, 518, 275 N.W. 229, 231 (1937) ("At least in a limited sense the relation of a teacher to a pupil is that of one *in loco parentis*.)). "However, this duty is coterminous with the teacher's presence at school." *Ibid.* "Supervision implies oversight," and, "[i]n order to oversee student activity, a teacher must be present to observe and control." *Ibid.* The State of Michigan recognizes the importance of this general duty of school employees to protect students under their care, and the State encourages the discharge of that protective duty, by all persons employed by or under contract with a school, by extending a broad statutory shield of immunity from suit where school personnel use reasonable force to quell a student altercation. *See* Mich. Comp. Laws § 380.1312(4). The statute includes the following language:

> A person employed by *or engaged as a* volunteer or *contractor by a local or intermediate school board* or public school academy may use reasonable physical force upon a pupil as necessary *to maintain order and control in a school or school-related setting for the purpose of providing an environment conducive to safety* and learning. In maintaining that order and control, the person may use physical force upon a pupil as may be necessary for 1 or more of the following:
> (a)      To restrain or remove a pupil whose behavior is interfering with the orderly exercise and performance of school district or public school academy

-9-

> functions within a school or at a school-related activity, if that pupil has refused to comply with a request to refrain from further disruptive acts.
>
> (b)    For self-defense or the defense of another.
> (c)    To prevent a pupil from inflicting harm on himself or herself.
> (d)    *To quell a disturbance that threatens physical injury to any person.*

*Ibid.* (emphasis added).  The statute provides that a school employee or contractor "who exercises necessary reasonable physical force upon a pupil, or upon another person of school age in a school-related setting, as described in subsection (4) is not liable in a civil action for damages arising from the use of that physical force."  Mich. Comp. Laws § 380.1312(5).

The answer to the question whether defendant Morning (and through vicarious liability, defendant First Student, a proposition that First Student does not challenge in this motion) had a duty to protect an innocent plaintiff from the criminal act of a third party under his purview "depends on the relationship between the parties, the nature and foreseeability of the risk, and any other considerations that may be relevant on the issue"; the "ultimate decision turns on whether a sufficient relationship exists between [the defendant] and a third party to impose a duty under [the] circumstances." *Buczkowski*, 441 Mich. at 103, 490 N.W.2d at 334.  The decisions nearest the point recognize that school personnel have a duty adequately to supervise and control students to stop them from attacking each other.  *Cook*, 94 Mich. App. at 98, 288 N.W.2d at 611; *Gaincott*, 281 Mich. at 518, 275 N.W. at 231.  The defendants have cited no authority suggesting that such a duty is limited only to teachers and does not extend to all school personnel who regularly have supervisory charge of students, such as bus drivers.  The State's weighty interest in the diligent discharge of this duty is reinforced by the express statutory grant of immunity noted above, which extends to all school employees *and contractors* who may be called upon to use reasonable force to prevent or break up a fight between students, as noted above.  *See* Mich. Comp. Laws §§

380.1312(4), (5) "Ultimately, whether [the court] should impose a duty on the defendant . . . despite the actual lack of foreseeability turns on whether as a matter of policy [the defendant] should bear the burden of plaintiff's loss. *Buczkowski*, 441 Mich. 96, 108, 490 N.W.2d at 334. Here the compelling public interest in protecting school children from violent physical attacks by their fellow students weighs heavily in favor of fixing liability for the plaintiff's injuries on the adult party who, the record suggests, had the most immediate capacity to prevent the attack in the first place, or who, being nearest the scene, was in the best position either to halt or prevent it himself, or to summon authorities who could do so, if he could not.

The defendants' argument that T.M. was merely a pedestrian and their reliance on the decisions holding as a general principle that a bystander has no duty to intervene to halt an attack against the plaintiff by a third party wholly ignore the context of the altercation, which in this case involved two school children, one of whom was under the immediate control and supervisory purview of defendant Morning. In that context, where the parties to the attack were not simply a pedestrian and a passing assailant, but instead were school children subject to the control of adult school personnel, it is well established that a duty to exercise supervisory control and actively to prevent an attack by one student on another may, and should, be found to arise.

The Court holds that in the circumstances established so far by the discovery, defendants Morning and First Student had a duty to exercise reasonable care to prevent the assault on T.M. by student R. and her cohorts.

### B.

Unfortunately, the incomplete record before the Court does not allow a fully informed analysis of whether and how the defendants breached their duty to the plaintiffs. However, the facts

available suggest that it is possible, and perhaps likely, that further evidence would support a finding that Morning breached his duty to the plaintiff by unreasonably failing to prevent R. and T.M. from having contact on their way home.  The record is undeveloped as to what happened on the bus immediately before the "unscheduled stop."  However, the testimony available suggests that the stop was made at the request of R. or her friends, based on their desire to confront T.M., who was walking nearby.  That the stop was unusual is corroborated by the facts that approximately 18 students got off the bus, and that almost all of them embarked once again after the fight concluded. Even if Morning did not know that a fight was imminent when R. and her friends got off the bus, the plaintiff testified that the bus remained stopped throughout the attack, so it seems likely that further testimony may show that Morning at the least was aware of the altercation once it had started.  And the facts so far adduced suggest that, instead of doing anything to halt the attack, he apparently waited until the fight was over and students had gotten back on the bus, then drove away, having made no effort either to report the fight or even to investigate whether T.M. might need aid for her injuries.

## C.

The defendants insist that on the record developed so far, the plaintiffs cannot establish that their conduct was the proximate cause of the assault on T.M. by R., and that regardless of Morning's conduct, the assault was an intervening and superseding cause of T.M.'s injuries.

Michigan courts have explained that "'[p]roximate cause' is a legal term of art that incorporates both cause in fact and legal (or 'proximate') cause.  *Craig ex rel. Craig v. Oakwood Hosp.*, 471 Mich. 67, 86, 684 N.W.2d 296, 309 (2004).  "The cause in fact element generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have

-12-

occurred." *Skinner v. Square D Co.*, 445 Mich. 153, 163, 516 N.W.2d 475, 479 (1994).  The

Michigan Supreme Court "has defined 'proximate cause' as 'that which in a natural and continuous

sequence, unbroken by any new, independent cause, produces the injury, without which such injury

would not have occurred.'" *Black*, 879 N.W.2d at 642  (quoting *McMillian v. Vliet*, 422 Mich. 570,

576, 374 N.W.2d 679, 681 (1985)).  "An 'intervening cause' is defined [as] 'one which actively

operates in producing harm to another after the actor's negligent act or omission has been

committed.'" *McMillian*, 422 Mich. at 576, 374 N.W.2d at 682 (quoting 2 Restatement of Torts §

441, at 465).  "An intervening cause breaks the chain of causation and constitutes a superseding

cause which relieves the original actor of liability, unless it is found that the intervening act was

'reasonably foreseeable.'"  *Ibid.*  "If reasonable minds could not differ regarding the proximate

cause of a plaintiff's injury, courts should decide the issue as a matter of law." *Black*, 879 N.W.2d

at 642  (citing *Transp. Dep't v. Christensen*, 229 Mich. App. 417, 424, 581 N.W.2d 807, 811

(1998)).  "[P]roper analysis of a proximate cause question frequently will turn on accurately

determining whether the facts in a case present a situation involving direct causality or intervening

causality," and "[t]he fact that more than one cause operates to produce an injury is not in itself

determinative." *McMillian*, 422 Mich. at 577, 374 N.W.2d at 682.  "Two causes frequently operate

concurrently so that both constitute a direct proximate cause of the resulting harm," but "[a]n

intervening cause [] is distinguishable from concurrently operating causes in that it involves an

intervening cause or act which begins operating 'after the actor's negligent act or omission has been

committed.'" *Ibid.* (quoting 2 Restatement of Torts § 441).

      Contrary to the defendants' position, the record does not compel the conclusion that there

is "no set of facts" on which a jury reasonably could find that Morning's decision to allow R. and

her friends to disembark the bus at an unscheduled stop where the plaintiff was walking nearby was both the cause in fact (the "but for" cause) and the legal or proximate cause of the plaintiff's injuries from the resulting fight.

Morning may be able to establish, on some set of facts, that the fight would have taken place anyway, or that R. would have had an equal opportunity to pursue and assault the plaintiff if she had left the bus at her usual stop (e.g., if the "unscheduled" stop was only trivially removed from where R. otherwise would have gotten off the bus anyway). *See Marcelletti*, 198 Mich. App. at 662, 500 N.W.2d at 128 ("An element in the link between Bathani's alleged failure to report the prior abuse and the child's injuries is missing. Even if Bathani had reported the earlier alleged incident, Andrew would not necessarily have been protected from Lux."). But the Court cannot make that determination as a matter of law at this stage of the case, because the record of events remains undiscovered and undeveloped, discovery remains open, and there just as well could be other facts to suggest that, had Morning refused to discharge R. at the unscheduled stop, and had R. stayed on the bus until her usual destination, she would have had no realistic opportunity to confront plaintiff T.M.

It also seems possible that the defendants could present evidence that would support a finding that the fight was not reasonably foreseeable. The cases relied upon by the plaintiffs, which concern a bus driver's responsibility not to expose young children to the serious perils of heavy traffic by allowing them to embark or disembark from a bus at unsafe locations, are not particularly helpful on this point. In those cases it readily could be foreseen, for example, that improperly discharging a young child at a spot that required her to walk unattended for many blocks down a busy street readily could lead to her wandering into traffic unaware and being hit by a passing car.

-14-

*Pac. Employers Ins. Co. v. Michigan Mut. Ins. Co.*, 452 Mich. 218, 226, 549 N.W.2d 872, 876 (1996) ("The injuries that followed were foreseeably identifiable with the negligent decision to disembark the child at the wrong bus stop."); *Dedes v. Asch*, 233 Mich. App. 329, 332, 590 N.W.2d 605, 607 (1998) (same), *overruled on other grounds by Morales v. Auto-Owners Ins. Co.*, 469 Mich. 487, 672 N.W.2d 849 (2003). In this case, it is possible that the defendants could establish that it was not foreseeable that letting students off the bus would result in some of those students beating up the plaintiff, who was walking with her sister down the sidewalk nearby. Certainly the criminal assault of one student by another is not the sort of danger that flows naturally from a negligent discharge of a child at the wrong bus stop in the way that a child wandering into traffic does. *C.f. Rogalski v. Tavernier*, 208 Mich. App. 302, 307, 527 N.W.2d 73, 76 (1995) ("[C]riminal or violent acts are not foreseeable results of the serving of alcohol to minors and, therefore, cannot serve as a basis for social host liability."); *Auto Owners*, 310 Mich. App. at 155, 871 N.W.2d at 544 ("Seils points to no evidence from which the FOPA could have reasonably foreseen Pink's intentional criminal acts and [] Pink's decision to commit premeditated, deliberate murder (and other assaults) was an intervening or superseding cause of Seils's damages.").

Nevertheless, there are other circumstances that appear possible or likely, based upon the limited facts so far discovered, in which the assault reasonably could be found to be foreseeable. "Michigan has 'long recognized that criminal acts by third parties can be foreseeable.'" *Auto Owners Ins. Co. v. Seils*, 310 Mich. App. 132, 160, 871 N.W.2d 530, 546 (2015) (quoting *Dawe v. Bar-Levav & Assoc.*, 289 Mich. App. 380, 394, 808 N.W.2d 240, 249 (2010)); *Dawe*, 289 Mich. App. at 394, 808 N.W.2d at 249 (holding that evidence that the defendant therapist "knew or should have known that [the assailant] would form improper emotional attachments to persons in his group

therapy and that he might seek out [and harm] those persons long after the termination of his participation in the group" would allow a jury reasonably to conclude that the defendant breached his duty to the victim by allowing the assailant to participate in the group therapy).

In this case, if the evidence shows, for example, that R. and her friends asked to be let off the bus after they sighted the plaintiff, in light of the testimony that Morning knew the dangers of allowing these students to have contact with each other, then a jury reasonably could conclude that Morning knew, or should have known, that R. wanted to get off the bus in order to fight with the plaintiff, and that Morning should have foreseen that a fight would occur. It has been held that where school personnel know that a student has a history of assaulting other students, then they may be liable for negligence where they fail adequately to control or supervise the offending student and thereby allow her the opportunity for a subsequent attack. *See Edwards v. Oakland Livingston Human Services Agency*, No. 263738, 2006 WL 1044284, at *4 (Mich. Ct. App. Apr. 20, 2006). In that case, the court summarized the circumstances that established causation as follows:

> The evidence here established that the boy had previously engaged in violent behavior with other students and teachers and that [the defendant teacher] had previously made a staffing referral on the boy's "behavioral issues in the classroom." In addition, after the first complaint against the boy, Frost Head Start required additional supervision of the boy. While the boy's specific act of sexual assault may not have been foreseeable, the individual defendants were aware that the boy had engaged in physical altercations with other students and teachers. A foreseeable consequence of the failure to provide supervision to a child with violent propensities is that the child might engage in violent or inappropriate behavior with other children. Accordingly, although the exact mechanism of injury that plaintiff's daughter received may not have been foreseeable, it was foreseeable that plaintiff's daughter might be injured by the boy if the individual defendants failed to provide proper supervision. Under these circumstances, whether the individual defendants exercised reasonable care is a question for the finder of fact.

*Ibid.*; *but c.f. Babula v. Robertson*, 212 Mich. App. 45, 51-54, 536 N.W.2d 834, 838-39 (1995) (holding that the sexual assault of a young child by the babysitter defendant's husband while the

babysitter was asleep was not foreseeable because the husband had no prior record of sexual assault or abuse against children). The record here amply suggests that Morning knew about R.'s fight with T.M. earlier the same day, and the facts adduced at the plaintiff's deposition suggest that development of the record may lead to evidence that Morning disregarded the danger that R. would continue her vendetta against T.M., and that he carelessly transported R. to a favorable ambush spot, then sat by as the attack proceeded.

The defendants essentially urge the Court to conclude, because there is no evidence *yet* in the record that definitively supports the causation element, that the claims against them ought to be dismissed before the search for such evidence proceeds any further. That, of course, is not how this works. If the defendants wanted to challenge the adequacy of the plaintiff's bare allegations, then the proper vehicle for that attack would have been a motion to dismiss under Rule 12(b)(6). If their object is to challenge the sufficiency of the evidence, then they must give the plaintiff time to develop the record, if it appears that additional evidence may be forthcoming in the usual course of discovery. *See* Fed. R. Civ. P. 56(d). In this case, the plaintiffs have "clearly explained [their] need for more discovery on [the issues challenged by the defendants in their] motion for summary judgment." *United States v. Rohner*, 634 F. App'x 495, 504 (6th Cir. 2015) (citing *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,* 280 F.3d 619, 627-28 (6th Cir. 2002)). Where, as here, facts essential to the opposition to the motion are unavailable due to the deficiency of the record, the Court will "allow time to obtain affidavits or declarations or to take discovery." Fed. R. Civ. P. 56(d)(2). Under the circumstances, where it appears likely that further development of the record well may justify the plaintiff's opposition, the Court will deny the motion for summary judgment, which the defendants chose to file at this stage of the case.

III.

A legal duty exists upon defendants Morning and First Student to exercise reasonable care to prevent the assault on the plaintiff, and fact questions preclude the determination of the issue of causation as a matter of law.

Accordingly, it is **ORDERED** that the motion for summary judgment by defendants Andri Morning and First Student, Inc. [dkt. #29] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  July 26, 2016

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 26, 2016.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI

-18-